UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TRUCKING ASSOCIATION OF NEW YORK,

                *Plaintiff*,

-against-

METROPOLITAN TRANSPORTATION AUTHORITY,
TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,
LETITIA JAMES, in her capacity as Attorney General for the
STATE OF NEW YORK

                *Defendants*.

**COMPLAINT**

Case No:

---

Plaintiff, Trucking Association of New York (hereinafter "Plaintiff" or "TANY"), by and through its counsel, Monaco Cooper Lamme & Carr, PLLC, as and for a Complaint against defendants, Metropolitan Transportation Authority (hereinafter "MTA"), Triborough Bridge and Tunnel Authority (hereinafter "TBTA"), and Letitia James, in her capacity as Attorney General for the State of New York, alleges and states the following:

### NATURE OF THE CASE

1. TANY brings this lawsuit on behalf of its members to challenge the constitutionality of the Central Business District Tolling Program ("Tolling Program") and prevent its implementation.

2. The Tolling Program is a first-of-its-kind congestion pricing scheme for which there is no prior precedent in this country.

3. The Tolling Program is authorized by New York Vehicle & Traffic Law Section 1704.

4. The Tolling Program's dual mandates are (1) to reduce congestion in the Central Business District of Manhattan and (2) to generate $1 Billion in net revenue annually, to be allocated to New York City's buses, subways, and railroads.

1

5.  To generate this astonishing amount of money every year, the Tolling Program will charge certain classes of vehicles a hefty toll for crossing below 60th Street in Manhattan ("Central Business District" or "Zone").

6.  Several vehicle classes are fully exempt from the Tolling Program. Most notably, New York City Taxis and For-Hire Vehicles (such as Uber and Lyft), despite making up *more than half* of all vehicle traffic in the Zone, will pay nothing for entering.

7.  Almost all other vehicle classes, including all passenger vehicles, have a partial exemption. These vehicles will be charged for entry into the Zone no more than once per day.

8.  The only vehicle classes with no full or partial exemptions are commercial trucks and vans. These vehicles must pay the toll each and every time they enter the Zone.

9.  Despite making up only 4% of all traffic in the Zone, commercial trucks (hereinafter "delivery trucks" or "TANY trucks") bear by far the biggest burden under the Tolling Program, while other classes of vehicle that make up more than half of all traffic in the Zone are fully exempt.

10. To make the unfairness of this tolling structure even worse, TANY trucks are unable to take advantage of subways and buses to complete their necessary deliveries, so they have no choice but to enter and re-enter the Zone as many times per day as required to meet their customers' needs.

11. Worse still, the $1 Billion per year in net revenue that will be generated from the Tolling Program will be allocated exclusively to New York City's subways, buses, and railroads – thus, TANY trucks will not and cannot receive any benefit from the Tolling Program they are funding.

12. As set forth herein, the Tolling Program is unconstitutional, and its implementation must be halted. Implementation will begin on June 30, 2024, unless this Court acts.

13. TANY seeks (i) a declaratory judgment that the Tolling Program is unconstitutional and (ii) a preliminary injunction preventing the implementation of this unconstitutional toll.

## PARTIES, JURISDICTION AND VENUE

14. TANY was and is a not-for-profit trade association representing the interests of the trucking industry in New York State.

15. TANY's members represent a diverse class of motor carriers, ranging from single truck owner-operator companies to large national fleets with a business presence in New York State.

16. MTA was and is a public benefit corporation chartered by the New York State Legislature under the Metropolitan Transportation Authority Act. MTA is a program sponsor for the Central Business District Tolling Program.

17. TBTA was and is a public benefit corporation organized and existing under the Public Authorities Law of the State of New York. New York Vehicle & Traffic Law Sec. 1704 empowers TBTA to "plan, design, install, construct, and maintain" the Central Business District Tolling Program.

18. Letitia James is the Attorney General for the State of New York and is made a party to this action because TANY is challenging the constitutionality of a law of the State of New York.

19. Jurisdiction is proper pursuant to 28 U.S.C. Sec. 1331 because this action arises under the Constitution and laws of the United States.

20. Venue is proper in this Court pursuant to 42 U.S.C. Sec. 1931(b)(1) and (b)(2).

21. Plaintiff demands a trial by jury.

## FACTS

22. TANY is a not-for-profit trade association dedicated to representing the interests of the trucking industry in New York, with the efficient and safe movement of freight being the top priority for the Association.

23. TANY's membership is comprised of a wide array of motor carrier companies with a business presence in New York State, ranging from single truck owner-operators to large national fleets.

24. Membership in the Association also includes companies that service the motor carrier, trucking, and freight industries.

25. Most of TANY's members are small- to mid-sized family owned and operated fleets.

26. The critical importance of New York's trucking industry cannot be overstated. In New York, there are approximately 46,000 trucking companies in operation, with the majority being small, locally owned businesses utilizing fewer than 20 trucks. These small enterprises play a crucial role in the state's economy, representing one out of every 28 jobs. Nearly 90 percent of New York communities rely exclusively on trucks to transport their goods, and over 96 percent of all manufactured products are shipped by trucks. Furthermore, more than two million businesses across New York State, regardless of their size, depend on efficient goods transportation for their factories, stores, and customers. As set forth in more detail below, the state's trucking industry is particularly critical to the economic vitality and success of the New York City metro region, and, as relevant here, lower Manhattan.

27. The trucking industry is appropriately heavily regulated, but it is also heavily taxed. TANY members abide by federal and New York State labor and wage laws that are unique to the freight industry and pay a host of additional charges and taxes imposed upon their operations in New York.

28. The trucking industry in New York paid approximately $979 million in federal and state roadway taxes in 2023. This represents 29 percent of all taxes owed by New York motorists despite trucks representing only 7 percent of all vehicle miles traveled in the state. To break this down to a per truck basis, a typical tractor trailer combination in New York pays $23,680 in state and federal highway user fees, over $13,000 of which (i.e., more than half) is attributable to New York registration fees and fuel tax. These taxes are over and above the typical taxes paid by businesses in New York.

29. Commercial vehicles are charged a Highway Use Tax, exclusive to commercial vehicles, for every mile traveled in New York State, including in Manhattan.

30. Specific to operating in Manhattan, commercial vehicles are subject to the Commercial Motor Vehicle Tax as well as significant parking fines resulting from a lack of enforcement in loading zones and a lack of commercial parking space throughout Manhattan.

31. TANY members are further faced with bridge and tunnel tolls of between $87.50 and $115 simply to enter Manhattan depending on the time of day and whether E-ZPass is used.

32. In November 2023, the Traffic Mobility Review Board ("TMRB") published its final report to MTA and TBTA regarding the structure of the Tolling Program (hereinafter "TMRB Report").  Per this report, the TMRB was tasked by New York State to make recommendations to TBTA regarding toll rates, credits, discounts, and exemptions for the implementation of the Tolling Program.

33. The TMRB Report made the following recommendations, which were subsequently approved by MTA and TBTA:

    a) Passenger vehicles should be charged a $15 toll for entering below 60th Street in Manhattan ("Central Business District" or "Zone"), no more than once per day;

    b) Trucks should be charged a $24 or $36 toll (depending on size) each and every time they enter the Zone;

    c) Toll rates should be 75% lower after 9:00 pm;

    d) For-Hire Vehicles (such as Uber and Lyft), along with New York City Taxis, are fully exempt from the Tolling Program.

34. The TMRB Report noted that the Tolling Program must reduce congestion in the Zone and generate $1 billion in net annual revenue to fund $15 billion for capital projects for transit and commuter rail improvements.

35. According to statistics contained in the TMRB Report, trucks make up only 4% of all vehicle traffic in the Zone, while For-Hire Vehicles and Taxis (both exempted classes of vehicles) make up a whopping 52% of traffic in the Zone.

36. The TMRB Report speculated that charging lower rates during overnight hours may help to incentivize truck drivers to shift their hours of travel into the Zone to less congested times.

37. The TMRB Report stated that the charges for trucks were based, in part, on the need to encourage the "optimization of deliveries" to reduce trucks' contribution to congestion in the Zone.

38. MTA has reported that 80% of the profit from the Tolling Program will be used to improve New York City Transit (subways and buses), 10% will be allocated to the Long Island Railroad, and 10% will be allocated to Metro-North Railroad.

39. TANY has continuously advocated against the Tolling Program on behalf of its members, offering alternatives to MTA, TBTA, and TMRB to ensure an equitable implementation of the Tolling Program.

40. TANY has advocated for an exemption of the supply chain industries from the Tolling Program; pricing parity between trucks and passenger vehicles; or at the very least a once-per-day charge to trucks entering the Central Business District, similar to that afforded to passenger vehicles, or any combination of these alternatives.

41. MTA and TBTA failed to include any of TANY's proposals in the Tolling Program implementation plan and have instead proceeded to ensure that the Tolling Program disproportionally targets TANY Members.

42. Hundreds of millions of tons of freight are moved into or out of New York City each year. The top three zip codes for daily freight deliveries and shipments are located in midtown Manhattan next to the Lincoln Tunnel.

43. That freight includes medical supplies, clothing, food, water, school supplies, hospitality supplies, home and commercial heating oil, and more essential goods.

44. Trucks and other commercial vehicles deliver nearly all of that freight.

45. TANY anticipates that the amount of freight tonnage moved into or out of Manhattan each year by its members will substantially increase over the next twenty (20) years.

46. Freight tonnage is projected to grow by 68 percent by 2045 in New York City.

47. Vitally important service industries, like moving, plumbing, electrical, and general maintenance services, rely on the trucking industry.

48. On a given day, many of the trucks delivering this essential freight travel into and throughout the Zone, and will be forced to subsequently reenter the Zone multiple times per day, to abide by their customers' strict delivery instructions.

49. TANY members have no alternative means of operating their businesses and making deliveries in Manhattan other than to subject their fleets to charges imposed by the Tolling Program.

50. Each facet of the Tolling Program adversely targets TANY members, from the boundaries of the Zone, to the pricing disparity among motor vehicles, even down to the frequency of Tolling Program charges imposed upon TANY members.

51. The Tolling Program is designed such that trucks will be charged per entry into the Zone, with no exceptions.

52. MTA and TBTA tout the Tolling Program's off-peak pricing as a concession to the freight industry.  However, this "concession" provides virtually no benefit to TANY members.

53. The Tolling Program's off-peak pricing model purports to charge a reduced toll price to commercial vehicles while keeping in place multiple charges per entry (and re-entry) into the Zone.

54. In reality, the off-peak pricing model is largely unusable for the freight industry due to factors beyond the industry's control.

55. TANY has been a long-time supporter of the Off Hours Delivery Program, which provides financial incentives to those businesses that are able to implement it.

56. However, the industry must make their deliveries in the Zone based upon customer requirements and logistical constraints which do not permit a switch to off-peak hours, as MTA and TBTA have simplistically asserted.

57. For example, customers in the Zone operate under strict freight elevator rules and typically employ a unionized workforce, making any shift to deliveries during off-peak hours impossible. Residential buildings restrict daily delivery access to between 8:30 AM and 4:00 PM, construction sites do not operate during overnight hours, and few businesses will accept deliveries overnight.

58. An additional consideration arises in the event that some of a motor carrier's customers elect to take advantage of the Off Hours Delivery funding, but not all of their customers make the switch. Under that scenario, the result would likely be <u>additional</u> truck trips. Whereas now that carrier can route a single truck throughout the course of the day, if not all of the carrier's customers take advantage of the Off Hour Delivery Program, the carrier would then likely need one truck for daytime deliveries, and a second truck for nighttime deliveries. Alternatively, if only one of a motor carrier's customers is able to switch to Off Hours Delivery, the carrier may be forced to alter its services and not deliver to that customer at all, as it may not be feasible to send a truck in overnight to service one location.

59. Similarly, the Tolling Program's off-peak pricing "concession" will have little to no effect on TANY members' delivery schedules.

60. TANY members already strive to complete their deliveries in an efficient and cost-effective manner.

61. A truck located north of the Zone on the East Side of Manhattan and heading to Queens or Brooklyn will use the Queensboro Bridge as the most efficient crossing.

62. Access to the Queensboro Bridge is on either 59th Street or 58th Street, both of which are located in the Zone.

63. This means that a truck heading from the East Side of Manhattan to Queens or Brooklyn will be charged under the Tolling Program for simply accessing either the 59th Street or 58th Street entrance to the Queensboro Bridge.

64. Similarly, a truck located north of the Zone, heading south on the West Side of Manhattan, will be charged under the Tolling Program to simply access Route 9A (which is exempt from the congestion pricing toll) at 59th Street as trucks are prohibited on 9A north of 59th Street.

65. These examples illustrate the most efficient routes available to trucks operating in Manhattan to minimize time, vehicles traveled, and fuel use.

66. Yet, despite already employing the most efficient routes under these examples, TANY Members will be left with no choice but to incur charges under the Tolling Program.

67. Traveling north to cross the George Washington Bridge to avoid one of the multiple per-day charges under the Tolling Program will require TANY members to operate their trucks for increased lengths of time and distance, shifting traffic to other burdened areas of New York City, burning more fuel and creating more unwanted emissions, and potentially creating difficulties complying with Federally mandated hours-of-service requirements.

9

68. The trucking industry and truck operators support every segment of the economy in Manhattan.

69. MTA and TBTA expect TANY members to pass along the cost of the new toll to their customers.

70. Customers in the Zone, like restaurants, hospitals, and schools, frequently receive multiple deliveries per day.

71. It is conceivable that one customer in the Zone will absorb Tolling Program charges four (4) separate times in one day.

72. For example, one trucking company may deliver produce, a second trucking company may deliver meat, a third trucking company may deliver beverages, and a fourth trucking company may deliver linens to a single business.

73. These additional charges, compounded, will have a significant economic effect on the tens of thousands of businesses located in the Zone, especially the vast number of small grocers and eateries that rely on the trucking industry to operate their businesses.

74. Implementation of the Tolling Program disproportionately targets TANY Members with both the intention and the anticipated effect of changing their routes, rates and services.

75. As such, TANY urges the Court to grant its motion for preliminary injunction against the implementation of the Tolling Program.

## COUNT 1

### THE TOLLING PROGRAM
### VIOLATES THE COMMERCE CLAUSE
### OF THE UNITED STATES CONSTITUTION
### BECAUSE IT IS NOT A FAIR APPROXIMATION OF USE
### AND IS EXCESSIVE IN RELATION TO THE BENEFIT CONFERRED

76. TANY repeats and realleges all preceding paragraphs as if fully set forth hereunder.

77. The Tolling Program violates the Commerce Clause of the United States Constitution.

78. TANY has standing to assert a Commerce Clause claim against defendants because some of its members travel both within and outside of New York State in their trucking businesses.

79. TANY has standing to assert a Commerce Clause claim against defendants because some of its members have terminals and/or offices located both within and outside of New York State.

80. TANY has standing to assert a Commerce Clause claim against defendants because some of its members deliver goods shipped to New York State from other States.

81. The Tolling Program violates the Commerce Clause because it imposes a financial burden on TANY trucks which is not a fair approximation of their use of the Central Business District.

82. The Tolling Program violates the Commerce Clause because it imposes a financial burden on TANY trucks which is excessive in relation to the benefit conferred upon them.

83. TANY and its members have sustained damages as a result of the imminent violation of their Constitutional rights.

84. TANY and its members will suffer irreparable harm if the Tolling Program goes into effect.

85. TANY asserts this claim pursuant to 42 U.S.C. Sec. 1983.

## COUNT 2

### THE TOLLING PROGRAM VIOLATES THE CONSTITUTIONAL RIGHT TO TRAVEL BECAUSE IT IS NOT A FAIR APPROXIMATION OF USE AND IS EXCESSIVE IN RELATION TO THE BENEFIT CONFERRED

86. TANY repeats and realleges all preceding paragraphs as if fully set forth hereunder.

87. TANY and its members have the Constitutional right to travel both interstate and intrastate.

88. The Tolling Program violates the right to travel, protected by the United States Constitution.

11

89. The Tolling Program violates the Constitutional right to travel because it imposes a financial burden on TANY trucks which is not a fair approximation of their use of the Central Business District.

90. The Tolling Program violates the Constitutional right to travel because it imposes a financial burden on TANY trucks which is excessive in comparison to the benefit conferred upon them.

91. TANY and its members have sustained damages as a result of the imminent violation of their Constitutional rights.

92. TANY and its members will suffer irreparable harm if the Tolling Program goes into effect.

## COUNT 3

### THE TOLLING PROGRAM VIOLATES THE SUPREMACY CLAUSE OF THE UNITED STATES CONSTITUTION BECAUSE IT IS PREEMPTED BY FEDERAL STATUTE

93. TANY repeats and realleges all preceding paragraphs as if fully set forth hereunder.

94. The Tolling Program violates the Supremacy Clause of the United States Constitution because it is preempted by federal statute.

95. The Federal Aviation Administration Authorization Act of 1994 ("FAAAA") sets forth that a State may not enact or enforce a law, regulation, or other provision having the force and effect of law related to prices, routes, or services of motor carriers with respect to the transportation of property.

96. The Tolling Program, on its face, is preempted by FAAAA because it is intended to have a significant effect on the prices, routes and/or services of TANY trucks.

97. The Tolling Program is preempted by FAAAA because, in practice, its implementation will have a significant effect on the prices, routes and/or services of TANY trucks.

12

95. The Federal Aviation Administration Authorization Act of 1994 ("FAAAA") sets forth that a State may not enact or enforce a law, regulation, or other provision having the force and effect of law related to prices, routes, or services of motor carriers with respect to the transportation of property.

96. The Tolling Program, on its face, is preempted by FAAAA because it is intended to have a significant effect on the prices, routes and/or services of TANY trucks.

97. The Tolling Program is preempted by FAAAA because, in practice, its implementation will have a significant effect on the prices, routes and/or services of TANY trucks.

98. TANY and its members have sustained and/or will sustain damages as a result of the imminent violation of their Constitutional rights.

99. TANY and its members will suffer irreparable harm if the Tolling Program goes into effect.

**WHEREFORE**, Plaintiff demands (i) a declaration that the Central Business District Tolling Program is unconstitutional, (ii) an injunction preventing the Central Business District Tolling Program from being implemented; (iii) attorney's fees; and (iv) the costs and disbursements of this action, along with such other and further relief as the Court deems just and proper.

Dated: May 30, 2024

MONACO COOPER LAMME & CARR, PLLC

By: /s/ B.D.C.
Brian D. Carr, Esq.
Bar Roll No. BC2323
Jonathan E. Hansen, Esq.
Bar Roll No. JH1129
*Attorneys for Plaintiff*
1881 Western Avenue, Suite 200
Albany, New York 12203
Tel. (518) 855-3535
Fax (518) 855-2526
Email: bcarr@mclclaw.com
        jhansen@mclclaw.com